**No. 55884.**—Wilbur-Ellis Company *v.* United States, protest 120000–K (Los Angeles).

COLE, Judge: Shark-liver oil, exported from Buenos Aires, Argentina, and entered at the port of Los Angeles, was classified as an advanced drug under paragraph 34 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 34), and accordingly assessed with duty at 10 per centum ad valorem. Plaintiff urges classification as a crude drug under paragraph 1669 of the Tariff Act of 1930 (19 U. S. C. § 1201, par. 1669), admitting such merchandise free of duty. During the course of the trial, defendant injected an alternative claim, invoking the provision for "Shark oil and shark-liver oil, including oil produced from sharks known as dogfish, not specially provided for," in paragraph 52 of the Tariff Act of 1930, as amended by the trade agreement with Canada, 74 Treas. Dec. 235, T. D. 49752, carrying

a rate of 10 per centum ad valorem, the same as that applied by the collector.

*Geo. S. Bush & Co., Inc.,* et al. v. *United States,* 26 Cust. Ct. 251, C. D. 1332, relating to dogfish-liver oil from Canada, and *Eastman Kodak Company* v. *United States,* 26 Cust. Ct. 267, C. D. 1333, covering shark-liver oil from Mexico, decided concurrently on June 12, 1951, control disposition of the present case because the merchandise is substantially the same, the issues are identical, and the material evidence that influenced our conclusions in those cases is incorporated herein.

The shark livers under consideration, like the livers involved in the cited cases, are desirable for their quantity of the therapeutically valuable vitamin A which is extracted in the form of oil from the livers. Plaintiff's proof, concerning the source of the livers and processing thereof to acquire the imported oil, is incomplete and unsatisfactory. Of the two shipments under consideration, no proof was offered as to the oil described in entry 1263. With respect to entry 1259, it appears from testimony of the president of the exporting corporation that his company began exporting shark-liver oil in 1943, at which time the livers were extracted from the shark on the same day the fish were caught and placed under refrigeration for such time as was necessary to inactivate their enzymes. Immediately thereafter, the livers were processed for oil content.

Two methods were mentioned by the witness but he was unable to say which was followed in obtaining the oil in question. Under one procedure, the livers were cut into small pieces and then put into double-bottom tanks heated with steam. The oil was obtained through decantation (sediment removed at various levels through use of a specially constructed jar adapted for the specific purpose) and then carried through a centrifugal machine for elimination of water and foreign matter. By another method, the livers were triturated (pulverized to a pulp or powder) in machines holding alkaline substances to destroy protein, and the entire mass was centrifuged to separate the oil. Residues, with oil content, were used as cattle and bird feed in the breeding and feeding of animals.

Although the foregoing descriptions of processes are very sketchy and not sufficient for an understanding of the procedures followed, so far as the oil in question is concerned, we have no difficulty in our determination of the various phases of this case by virtue of the inclusion herein of competent testimony found in the *Bush* and *Eastman Kodak* cases, *supra.*

No useful purpose would be served by repeating all that was said in those cases. The reasoning followed and conclusions reached there are equally applicable here, with the same force and effect. Accordingly, we hold that amended paragraph 52, *supra,* has no application; that the shark livers, from which the oil in question was acquired, are drugs in the tariff sense; that they are articles of commerce; that processing thereof in the country of exportation into the form of oil advanced the crude drugs along the line of their ultimate manufacture; and that such treatment in Argentina of the shark livers was not essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, but, on the contrary, the manipulation in the foreign country advanced the crude drugs "in value or condition," bringing the imported oil within the purview of paragraph 34, *supra,* and classifiable thereunder as an advanced drug, subject to duty at the rate of 10 per centum ad valorem, as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.