GEO. S. BUSH & CO., INC., ET AL. *v.* UNITED STATES (No. 4708) [1]

United States Court of Customs and Patent Appeals, May 25, 1955

*Lawrence & Tuttle (George R. Tuttle, Charles F. Lawrence,* and *Lawrence A. Harper* of counsel) for appellants.

*Warren E. Burger,* Assistant Attorney General (*Richard E. FitzGibbon* and *Joseph E. Weil,* special attorneys, of counsel), for the United States.

[Oral argument December 10, 1954, by Mr. Tuttle and Mr. Weil]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This appeal involves the classification of oil extracted from the livers of dogfish (shark) caught in Canadian waters. The livers were processed in Canada and the oil extracted therefrom and imported into the United States at the port of Seattle during the years 1943–1945, inclusive. It was classified by the collector as a "drug of animal origin, advanced" and duty assessed at the rate of 10 per centum ad valorem under the provisions of paragraph 34 of the Tariff Act of 1930, and further, at 1½¢ per pound, pursuant to section 2491 (a) of the Internal Revenue Code.

The importers protested that classification and claimed free entry under the provisions of paragraph 1669 of the act as a drug "in a crude state."

The involved paragraphs read:

Par. 34. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem; *Provided,* That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: *And provided further,* That no article containing alcohol shall be classified for duty under this paragraph.

Par. 1669. Drugs such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; all the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided*, That no article containing alcohol shall be admitted free of duty under this paragraph.

The United States Customs Court, First Division, overruled the protest, C. D. 1332, and from that judgment appellants come here.

This case was tried before the Customs Court concurrently with *Eastman Kodak Company* v. *United States*, 41 C. C. P. A. (Customs) 114, C. A. D. 539, and *Wilbur-Ellis Company* v. *United States*, 27 Cust. Ct. 317, the latter now pending before this court. Those cases likewise involve classification of oil extracted from shark livers and much of the testimony common to each was incorporated in the instant record.

In *Eastman Kodak*, the oil was obtained from shark livers processed in Mexico and imported into the United States.

In *Wilbur-Ellis*, the imported oil was obtained from shark livers processed in Argentina.

In those cases the Customs Court overruled the protests for free entry under paragraph 1669, *supra*, and sustained the collector's classification of the oil as drugs advanced in value or condition pursuant to the provisions of paragraph 34, *supra*.

The record discloses that the process of extracting oil from shark livers is generally the same. They are first ground or macerated, treated with steam at high temperatures, and passed through a series of centrifuges, thereby separating the oil from the tissue and water. The testimony also shows that since deterioration sets in immediately after the death of the fish, delay in processing the livers results in a progressive breakdown of amino acids and the development of free fatty acids.

Shark livers are rich in vitamin A and the purpose of the extraction process is to obtain the oil which carries the vitamin. The ultimate use to which the oil is put is succinctly described by the court below as follows:

Dogfish-liver oil has therapeutic value on the human and animals systems, in its use as a remedy for night blindness, skin diseases, faulty absorption of the gastrointestinal tract, and other physical difficulties, all of which are caused by deficiencies in vitamin A. The commodity is never used *per se* but is always further processed. When administered to cattle and poultry, it is usually blended with other oils, although occasionally, in "acute" cases, and especially to larger animals, it is given alone. As a remedy for humans, it is used in concentrated form, either as a capsule or in a liquid preparation.

In overruling the instant protest, the Customs Court found that processing of the livers in Canada was not essential to prevent their decay or deterioration, and accordingly held that the imported oil was properly classified as an advanced drug.

We held in *Eastman Kodak* that shark livers processed in substantially the same manner as those here had been "advanced in value and condition by grinding and crushing in a manner entirely beyond that 'essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, * * *'," and we believe the rule laid down in that case governs here.

In their brief, counsel for appellants suggest the issues here to be:

(1) Does paragraph 1677 by removing dogfish livers from drug classification leave the oil extracted from them the drug in the "crude state" called for by paragraph 1669?

(2) Does the Canadian embargo against exportation of dogfish livers provide factual conditions which render the vitamin oil free under paragraph 1669?

With reference to the first suggestion, paragraph 1677 reads:

Par. 1677. Fish imported to be used for purposes other than human consumption.

We have been unable to find any reference to, or reliance upon, the provisions of that paragraph in either the protest or assignment of errors, and we do not understand why it is raised here for the first time. Even by according appellants the benefit of doubt and assuming it could be properly considered here, we fail to see how the provisions of paragraph 1677 serve to remove dogfish livers from classification as drugs. The single case on that point cited by the importer, *United States* v. *Petow*, 34 C. C. P. A. (Customs) 55, C. A. D. 343, involving merchandise "consisting of sea water, fish scales, seaweeds, parts of fish, and accompanying offals," provides no support for the importers' contention.

The reasoning in support of the second issue of the importers is that certain actions by the Canadian Government constituted an embargo on the exportation of dogfish livers, which in turn compelled extraction of the oil within the Dominion of Canada and, therefore, the imported oil was the crudest form in which the drug could be exported from that country. In disposing of that issue, the Customs Court stated:

Plaintiffs' claim, alleging that an embargo existed on exportation from Canada of dogfish livers, and therefore the imported oil was the crudest form in which the drug could be obtained, is unsupported. The record shows that at the time in question exportation of dogfish livers was conditional, being allowed only upon issuance of a permit by the Canadian Government. Such circumstances offer no reason for determining the tariff status of this imported merchandise, even though only one permit might have been issued over a period of 5 years. To uphold plaintiffs' contention and allow a regulation or an order of a foreign government to fix tariff classification in this country, is so far removed from an

194

interpretation consistent with intent of Congress, that the matter needs no discussion.

We are unable to agree that the court erred in its disposition of that issue. As a general proposition import duties are equal and uniform on the same goods no matter from where imported. However, if we were to endorse the importers' reasoning, the result would be that dogfish liver oil entering this country from Canada would be free of duty, whereas similar oil imported from other countries would be subject to duty. It would thus be possible for a foreign government to effectively determine the classification of imports into this country. There is nothing in the statutes or decisions cited by the importers to support such an anomalous situation.

Full consideration has been given to appellants' specific challenge of the correctness of our holding in *Eastman Kodak* that, for customs purposes, dogfish livers are a crude drug. We have again reviewed our decisions in that and the other appeals involving similar as well as identical merchandise, in light of appellants' contentions and authorities cited, but do not believe they were erroneous.

The judgment of the Customs Court is *affirmed*.

COLE, Judge, having participated below, disqualified himself to sit in this case and JACKSON, Judge, retired, was recalled to participate herein.